[S. C., infra, 178.]
Equity — Injunction. — The statement in the bill showed that the parties had a conversation upon the subject of running their horses, upon which the defendant began to keep his horse for the purpose, and proposed to the plaintiff to enter into bond with security, which the plaintiff refused, telling the defendant he considered it nothing but a frolic; that he did not keep his horse at all, believing that the defendant would not run; particularly as he understood the defendant had lamed his horse in running over the turf.
The defendant required him to reimburse him for the expense of keeping, which he refused; upon which he brought suit.
At the trial of the cause, several of the plaintiff's witnesses were absent. The plaintiff further states, and it appeared to the Court, that the defendant at the trial, and after the jury had retired from the bar, sent them a note, stating that he did not intend to claim the whole $500 of the plaintiff, but would take $250, and give a release, which was probably the reason why the jury returned a verdict for five hundred dollars.
After the jury came in the defendant offered to take $150, if he would not move for a new trial, which, in order to get the case ended, he did not.
The answer admits the conversation respecting the race, but denies its being in a frolic, or that the plaintiff was intoxicated; and avers that it was made in good faith.
That agreeably to the laws of racing he took his horse to the race ground on the day, staked up his property, and agreeably to those rules, conceives himself entitled to the bet which was made — denies writing to the jury, c.
 Proof that he did write to them. *Page 37 
It is impossible for this verdict, obtained in the manner it has been, to stand; perhaps no case has occurred where it was more important for the pure administration of justice, that a judgment at law should be set aside, than this.
So far from the verdict having been properly obtained, the conduct of the defendant was criminal, as it related to his interference with the jury. It certainly was embracery, and highly reprehensible.
No part of our law which concerns the mode of proceedings in courts of justice, is more essential to *Page 38 
the interest of society, than the purity of the trial by jury.
The conduct of the defendant strikes at the ground upon which it stands.
But the consideration with the Court is in what manner they can remedy the injury which has arisen.
A judgment has been obtained at law, upon a contract, as is suggested, respecting a horse-race, which was allowable by the law.[1]
This court are not authorized to say that there was or was not such a contract as would enable the plaintiff to recover at law, supposing the trial to have been fairly conducted; nor are they authorized to invalidate the contract, in consequence of the improper behavior of the defendant at the trial.
The Court cannot say that it shall affect the justice of the demand. To decree a perpetual injunction upon this ground therefore would be improper; nor can we determine with propriety, that the defendant shall have the benefit of a judgment, thus unrighteously obtained.
In England, the course would be to direct an issue at law; and as this court have the power to direct an issue to be tried before themselves by a jury for the ascertainment of any fact, of which it may be necessary to satisfy the conscience of the court; it seems highly proper that it should be done. The parties will observe the following order: —
That the plaintiff, in the suit at law, and defendant in this court, state his demand against the defendant at law, and that an issue be made thereon, and tried in this court, to ascertain whether the plaintiff at law is entitled to recover, and if he is, how much.[2]
[1] By Act 1799, c. 8, horse-racing, as well as every other species of gambling, is made unlawful. This action arose before the passage of that act.
[2] 1 Eq. Ch. 377.